UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

JOAN E. McDONALD,

    Plaintiff,

- against -

AMERICAN INTERNATIONAL
GROUP, INC. and BACK
O'BEYOND, INC. d/b/a/
MOREFAR GOLF CLUB,

    Defendants.
------------------------------------X

06 CV 1547

06 Civ. _____

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

    Plaintiff Joan E. McDonald ("plaintiff" or "McDonald"), through her attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendants American International Group, Inc. ("AIG"), and Back O'Beyond, Inc., d/b/a Morefar Golf Club ("Morefar" or "the club")(collectively "defendants") as follows:

### NATURE OF THE ACTION

    1.    Plaintiff brings this action against defendants to remedy discrimination in employment on the basis of her sex and pregnancy in the terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII"), including the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the New York State Human Rights Law, Executive Law § 296 et seq. ("Executive Law"); and against defendant AIG for unlawfully aiding and abetting defendant Morefar in violating the New York State Human Rights Law, pursuant to Executive Law § 296(6).

234360 v1

2. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII and the Executive Law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and Title VII, 42 U.S.C. § 2000e-5(f)(3). The Court has jurisdiction over the Executive Law claims pursuant to 28 U.S.C. §§ 1367 and 1332.

4. Venue is proper in this District pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful practices complained of herein occurred within, and defendants regularly do business within, the Southern District of New York.

5. On or about March 24, 2005, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). On or about January 3, 2006, the EEOC issued to plaintiff notice of her right to sue. Plaintiff has fully complied with the administrative prerequisites to the filing of this action.

## PARTIES

6. Plaintiff, a citizen of Vermont, was employed by AIG from December 2001 until her employment was terminated on or about October 14, 2004. Plaintiff's damages are at least $75,000.

7. AIG is an insurance and financial services institution that is incorporated under the laws of Delaware with its principal place of business in New York. Back O'Beyond is the owner/operator of the Morefar Golf Club, and is incorporated under the laws of New York with its principal place of business in New York. AIG and Morefar jointly employed plaintiff and are employers within the meaning of Title VII and the Executive Law.

## FACTUAL ALLEGATIONS

8.  Plaintiff began working for defendants as Morefar's Head Golf Professional in December 2001, a position she held until her employment with defendants was terminated in October 2004.

9.  Plaintiff is a Class A member of the Ladies Professional Golf Association and has been in the golf business for more than twenty years. Before joining defendants, McDonald was the Assistant Golf Professional at a golf club in Mamaroneck, New York for seven years; prior to that, she was a teaching professional at a golf school in Vermont for ten years.

10.  At all relevant times, AIG operated Morefar, which is a private golf club that is open only to AIG management and employees of a select group of corporate members for recreation, staff events such as retreats, and client development outings.

11.  In addition to Morefar in New York, AIG golf clubs are located in Florida and Vermont. The Head Golf Professional at each of those clubs is a man.

12.  Upon information and belief, AIG participated in the hiring and firing of McDonald. Plaintiff also participated in benefits plans provided to AIG employees.

13.  Defendants hired plaintiff by offer letter dated December 10, 2001. The offer letter was signed by Morefar's General Manager, Ans de Beus ("de Beus").

14.  Morefar is open from April through October of each year, seven days a week. As the Head Golf Professional, plaintiff was responsible for managing the club's pro shop, overseeing course operations, hiring and supervising the club's seven staff members, coordinating tournaments and other AIG events that took place at the club, maintaining the club's equipment, and giving weekly golf clinics and lessons. Additionally, throughout 2004,

McDonald worked closely with the club's superintendent on a $5 million club renovation project.

15. According to the terms of her offer letter, McDonald was not required to work when the club was closed. Plaintiff's male predecessors did not work during this off-season. However, McDonald did work part-time during the club's off-season, managing the pro-shop, which included attending an annual merchandise show.

16. In her three years at Morefar, McDonald was the only one of four managers at Morefar who was not afforded a company car. The other three managers were men.

17. During her employment with defendants, McDonald received positive feedback regarding her performance. In December 2003, plaintiff received her only formal review. De Beus met with McDonald and told plaintiff she was doing well. At that time, de Beus awarded McDonald a raise and a bonus.

18. In or about the week of August 20, 2004, McDonald informed de Beus that she was pregnant and due to deliver in January 2005.

19. De Beus' first reaction to the news of plaintiff's pregnancy was to ask, "Who's the daddy?" When McDonald informed de Beus that she would be raising the child alone, de Beus asked sarcastically, "Will you be staying home with the baby or bringing it to work with you?" Plaintiff responded that she planned to work when the club re-opened in 2005 and would be obtaining childcare services to enable her to do so.

20. Within days of learning of McDonald's pregnancy, de Beus' demeanor toward plaintiff changed dramatically. Whereas de Beus had praised plaintiff's work in the past, after the announcement of McDonald's pregnancy, de Beus began to find fault with virtually every aspect of plaintiff's performance. Although de Beus had never provided plaintiff with a

written appraisal of her work, even as part of the December 2003 performance review, in September 2004 de Beus itemized numerous false criticisms in a memorandum to McDonald. In addition, de Beus increased her oversight of plaintiff by requiring McDonald to submit a bi-weekly report of all pro shop purchases and by requiring McDonald to get de Beus' approval before hiring any new staff.

21.     On or about October 14, 2004, plaintiff was called into a meeting with Josh Kagel ("Kagel"), a Director of Human Resources with AIG.

22.     Kagel informed plaintiff that Morefar was "moving in a new direction" and that the position of Head Golf Professional was being eliminated in favor of an Assistant Manager position. Kagel told McDonald that the termination of her employment was solely due to her position's elimination and was unrelated to her job performance.

23.     Plaintiff told Kagel she would like to be considered for the Assistant Manager position, even though it would be a demotion from the Head Golf Professional position. Kagel replied, "That's up to [de Beus]," and noted he was only there to discuss benefits.

24.     Following the meeting with Kagel, McDonald returned to the pro shop to compose herself and gather her belongings. De Beus arrived and told plaintiff, "You have to leave." McDonald told de Beus that she did not understand why her employment was being terminated. De Beus summoned Kagel, shouting, "Josh, Josh! She doesn't understand! You have to make her leave." Plaintiff asked de Beus to consider her for the Assistant Manager position; de Beus responded by repeating, "You have to leave!" McDonald continued to ask about the details of the Assistant Manager position and to express her interest in applying for the position. However, de Beus continued to tell plaintiff she had to leave the pro shop. At that point, McDonald complied and left.

25. Upon information and belief, de Beus told Morefar personnel that she hoped McDonald appreciated how much responsibility a baby was and that defendants had done McDonald a favor by terminating her position because plaintiff would no longer have to make the drive to and from the club every day.

26. Upon information and belief, a male clerk in Morefar's pro shop, who was under McDonald's supervision during her employment with defendants, assumed at least some of plaintiff's job responsibilities.

27. Upon information and belief, defendants were recruiting candidates for the position of "General Manager" at Morefar. A "General Manager" job is commensurate with plaintiff's experience and credentials.

28. Upon information and belief, AIG has not eliminated the Head Golf Professional position at its two other golf clubs. In both clubs, a man occupies the position of Head Golf Professional.

29. During plaintiff's employment with defendants, de Beus openly expressed bias toward numerous classes of people. De Beus frequently referred to AIG's management, including former Chairman Hank Greenberg ("Greenberg") and his wife, as "cheap Jews." On several occasions, in commenting on McDonald's negotiations with vendors, de Beus referred to plaintiff as being Jewish, although she is not. De Beus commonly referred to men as "dicks" who "played with their penises." In addition, de Beus voiced her opinions about "frigging foreigners," and inquired about job applicants' racial and ethnic background, expressing reluctance to hire those who appeared to be non-white and/or non-American born. De Beus told McDonald that Greenberg "wouldn't approve of those people" working in the club.

## FIRST CAUSE OF ACTION

### Discrimination Under Title VII

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 of this Complaint with the same force and effect as if set forth herein.

31. By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, including her pregnancy, in violation of Title VII.

32. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

33. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

### Discrimination Under the Executive Law

34. Plaintiff repeats and realleges paragraphs 1 through 33 of the Complaint with the same force and effect as if set forth herein.

35. By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, including her pregnancy, in violation of the Executive Law.

36. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

## THIRD CAUSE OF ACTION

### Aiding and Abetting Under the Executive Law

37. Plaintiff repeats and realleges paragraphs 1 through 36 of the Complaint with the same force and effect as if set forth herein.

38. By the acts and practices described above, defendant AIG discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, including her pregnancy, by aiding and abetting defendant Morefar in violating the Executive Law.

39. Plaintiff is now suffering, and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts, unless and until this Court grants relief.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of Title VII and the Executive Law;

(b) enjoining and permanently restraining these violations of the Title VII and the Executive Law;

(c) directing defendants to place plaintiff in the position she would have occupied but for defendants' discriminatory treatment of her, and make her whole for all earnings she would have received but for defendants' discriminatory treatment, including, but not limited to, wages, bonuses, pension, and other lost benefits;

(d) directing defendants to pay plaintiff compensatory damages and damages for her mental anguish and humiliation, as provided by Title VII and the Executive Law;

(e)   directing defendants to pay plaintiff punitive damages as provided by Title VII;

(f)   awarding plaintiff attorney's fees and costs, pursuant to Title VII;

(g)   awarding plaintiff interest and damages relating to adverse tax consequences; and

(h)   awarding such other and further relief as this Court may deem necessary and proper.

<u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       February 27, 2006

                               VLADECK, WALDMAN, ELIAS &
                               ENGELHARD, P.C.

                        By:    _____
                               Anne L. Clark (AC 6456)
                               Attorneys for Plaintiff
                               1501 Broadway, Suite 800
                               New York, New York 10036
                               (212) 403-7300